WINIFRED M. SACHARKO *v.* CENTER EQUITIES
LIMITED PARTNERSHIP
(2420)

DANNEHY, C.P.J., HULL and BORDEN, Js.

Argued April 12—decision released August 21, 1984

*John J. Bogdanski,* with whom, on the brief, was *Edward S. Ludorf,* for the appellant (third party defendant Insurance Company of North America).

*Robert E. Courtney, Jr.,* for the appellee (defendant-third party plaintiff).

BORDEN, J. This is an appeal[1] from the judgment of the trial court on a third party complaint by Center Equities Limited Partnership (Center Equities) against the third party defendant, Insurance Company of North America (ICNA). The court found that ICNA breached its insurance contract with Center Equities by failing to defend Center Equities in the main action.

The facts are as follows. Center Equities leased premises which it owned at 980 Farmington Avenue, West Hartford, to Edelweiss Restaurant, Inc. (Edelweiss). As a condition of the lease, Edelweiss agreed to carry liability insurance at its own expense and to name Center Equities as an additional insured under the policy. Edelweiss obtained such a policy from ICNA and the policy was in effect at the time of the accident.

---

The main action was brought by Winifred Sacharko, an employee of Edelweiss, against Center Equities, for personal injuries she sustained in a fall on icy pavement at the rear of the premises. Notice of the main action was given to ICNA, which refused to defend Center Equities. Center Equities joined Edelweiss[2] and ICNA as third party defendants and alleged that ICNA breached its duty to defend Center Equities in the main action.

The main action was defended by the Home Indemnity Company (Home Indemnity),[3] Center Equities' other liability insurer, and culminated in a stipulated judgment for Sacharko in the amount of $60,000.

On the third party complaint, the court rendered judgment for Center Equities against ICNA in the amount of $64,019.85, representing the $60,000 stipulated judgment in favor of Sacharko against Center Equities; $48.60 in out-of-pocket costs; and $3971.25 in attorney's fees incurred in defending the main action.

ICNA argues that the court erred in concluding that it was obligated to provide Center Equities with a defense to the claim asserted by Sacharko. We disagree.

"The question of whether [ICNA] had a duty to defend the action brought by [Sacharko] depends on whether the complaint in that action stated facts which appeared to bring [Sacharko's] claimed injury within the policy coverage." *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* 155 Conn. 104, 110, 230 A.2d 21 (1967); *Firestine* v. *Poverman,* 388 F. Sup.

---

[2] The court rendered judgment in favor of Edelweiss on the third party complaint. That judgment is not involved in this appeal.

[3] Although the trial court never referred to Home Indemnity, Center Equities informed us in its brief and at oral argument that Home Indemnity defended it in the main action and that the award of damages will inure to the benefit, not of Center Equities, but of Home Indemnity, which is the real party plaintiff in interest on the third party complaint.

948, 950 (D. Conn. 1975); 7C Appleman, Insurance Law and Practice § 4683. An insurer's duty to defend is broader than its duty to indemnify and is not eliminated by facts disclosed by the insurer's independent investigation. *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra.

Sacharko alleged in her complaint that she was an employee of Edelweiss; that she sustained injuries from a fall on an icy pavement adjacent to and in front of the rear exit of the restaurant; that Center Equities had exclusive control of the exterior of the premises; and that Center Equities failed properly to maintain the gutters, leaders, and downspouts at the rear of the building, which failure precipitated the icy condition of the pavement.

Under the terms of the policy, ICNA agreed to "pay on behalf of the Insured . . . all sums which the Insured shall become legally obligated to pay as damages because of A—Personal Injury or B—Property Damage caused by an occurrence during the policy period and within the policy territory." The policy further provided that "[t]he Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury . . . even if any of the allegations of the suit are groundless, false, or fraudulent . . . ." The additional insured endorsement of the policy stated that "[t]he 'Persons Insured' provision is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of ownership, maintenance or use of that part of the premises designated below leased to the Named Insured . . . ."

ICNA admitted in its answer to the third party complaint that Center Equities was an insured under the policy. The hazards against which ICNA insured Cen-

ter Equities were the "ownership, maintenance or use" of the premises. Sacharko's complaint alleged in substance that she was injured when she fell as a result of an icy condition which Center Equities negligently caused or allowed to exist on the premises. These allegations state facts, as the trial court found, which squarely bring the injuries sustained within the coverage of the policy. See *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra; 7C Appleman, supra, § 4683.01.

ICNA maintains that under the employee exclusion clause[4] of the policy it was not obligated to defend the suit brought by Sacharko. It argues that, since it would have had no duty to defend the named insured Edelweiss had Sacharko sued Edelweiss directly, it had no duty to defend Center Equities. We disagree. We conclude, as did the trial court, that because the policy contained a severability of interests provision,[5] ICNA cannot use the employee exclusion clause as a basis for abandoning its duty to defend Center Equities.

In general, a suit by the named insured's employee against an additional insured under the policy is protected from the employee exclusion clause; and where, as here, there is a severability of interests provision, a limit is placed on the exclusion to allow more complete recovery under the policy. 6C Appleman, supra, § 4413. Severability of interests provisions were adopted by the insurance industry to define the extent of coverage afforded by a policy issued to more than one insured. *Ratner* v. *Canadian Universal Ins. Co.,*

---

[4] The employee exclusion clause provides in relevant part that the insurer is relieved of the duty to defend if the suit involves "[p]ersonal injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury. . . ."

[5] The ICNA policy provided in pertinent part: "[t]he insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability."

359 Mass. 375, 380, 269 N.E.2d 227 (1971). Where a policy contains a severability of interests clause, it is a recognition by the insurer that it has a separate and distinct obligation to each insured under the policy, and that the exclusion under the policy as to employees of the insured is confined to the employee of the insured who seeks protection under the policy. *Employers' Liability Assurance Corporation* v. *Travelers Ins. Co.,* 411 F.2d 862, 865–66 (2d Cir. 1969); *General Aviation Supply Co.* v. *Ins. Co. of North America,* 181 F. Sup. 380, 384 (E. D. Mo.), aff'd, 283 F.2d 590 (8th Cir. 1960). "[T]he term 'the insured' as used in [the] policy must be examined by first applying the 'severability of interests' test. 'The insured' does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a claim is made against one who is an 'insured' under the policy, the latter is 'the insured,' for the purpose of determining the [insurer's] obligations with respect to such claim." *Commercial Standard Ins. Co.* v. *American Gen. Ins. Co.,* 455 S.W.2d 714, 721 (Tex. 1970). Thus, the test of whether the employee's exclusion clause precludes coverage must be applied to each insured separately and not to all collectively. Id.

The primary objective of an employee's exclusion clause is to avoid duplication of coverage with an employer's workers' compensation coverage. *General Aviation Supply Co.* v. *Ins. Co. of North America,* supra, 384. "If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer

is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured." Id.

ICNA next argues in effect that Sacharko's injuries occurred beyond the leased premises and therefore beyond the policy territory. The additional insured endorsement clearly stated that Center Equities was an additional insured with respect to the ownership, maintenance or use of the part of the premises leased to Edelweiss. The lease stated that Center Equities "does grant, demise and let unto the Lessee the restaurant building located at No. 980 Farmington Avenue . . . *including the use of the land directly in the rear thereof,"* subject to the rights of others to use the rear portion of the premises in common with Edelweiss. (Emphasis added.) In addition, the lease required Edelweiss to remove snow and ice from the public and private walks of the premises.

A lease is a contract and its construction presents a question of law for the court. *Robinson* v. *Weitz,* 171 Conn. 545, 551, 370 A.2d 1066 (1976). In construing a lease, the expressed intent of the parties is the controlling factor and the lease must be construed as a whole so as to give effect to every provision, if reasonably possible. Id. Our examination of the lease in question leads us to the conclusion that the location where Sacharko was alleged to have sustained her injury was included within the premises leased to Edelweiss and that, therefore, Center Equities, as an additional insured, was entitled to be defended by ICNA under ICNA's contract with Edelweiss.

ICNA next argues that the trial court erred in concluding that Center Equities was entitled to indemnification for liability predicated upon its own negligence. A liability policy is to be construed in light of the purpose for which it was intended, and the provisions of

the policy are to be strictly construed to effect the purpose for which the coverage was sought. 13 Appleman, supra, § 7486. Under the lease, Edelweiss was required to purchase liability insurance and to name Center Equities as an additional insured. The risks covered by the policy were the "ownership, maintenance or use" of the leased property. Sacharko's complaint, which, in substance, alleged negligent maintenance of the property, brings her injury within the coverage provided by the policy.

ICNA also maintains that Center Equities never directly notified it of Sacharko's claim or requested it to furnish a defense. This claim is without merit because ICNA admitted in its answer to the third party complaint that it received notice of the lawsuit and the request to defend.

ICNA finally argues that the court erred in its award of damages for its refusal to defend Center Equities. We agree that, under the particular circumstances of this case, the court erred in awarding damages to Center Equities amounting to the full amount of the stipulated judgment, expenses and legal fees.

Since ICNA breached its contract with Center Equities by refusing to defend, ordinarily it would be held to have waived any opportunity to defend under a reservation of right to contest the obligation to indemnify Center Equities, and would thus be liable to reimburse Center Equities for the full amount of the obligations reasonably incurred by Center Equities. *Missionaries of Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 113–14. "Where an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment obtained against the insured up to the limit of liability fixed by its policy." *Keithan* v.

*Massachusetts Bonding & Ins. Co.,* 159 Conn. 128, 139, 267 A.2d 660 (1970); *Schurgast* v. *Schumann,* 156 Conn. 471, 491, 242 A.2d 695 (1968); 7C Appleman, supra, § 4689.

Here, however, counsel for Center Equities candidly disclosed to us at oral argument that its interest is nominal only and that it is in fact representing the financial interest of its primary insurer, Home Indemnity, which provided the defense. We do not believe that the rule of damages stated in *Keithan* v. *Massachusetts Bonding & Ins. Co.,* supra, should under these circumstances extend to the insured's other insurer. To do so would convert a rule of compensation for loss into an opportunity for windfall.

The general rule is that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense. *Emons Industries, Inc.* v. *Liberty Mutual Fire Ins. Co.,* 481 F. Sup. 1022 (S.D.N.Y. 1979); *Ins. Co. of North America* v. *Liberty Mutual Ins. Co.,* 128 Cal. App. 3d 297, 304, 180 Cal. Rptr. 244 (1982); *Cordial Greens Country Club* v. *Aetna Casualty & Surety Co.,* 41 N.Y.2d 996, 363 N.E.2d 1178, 395 N.Y.S.2d 443 (1977); 14 Couch, Insurance (2d Ed.) § 51-36; 7C Appleman, supra, § 4682. Where two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits. *Nordby* v. *Atlantic Mutual Ins. Co.,* 329 N.W.2d 820, 823 (Minn. 1983).

Here the record does not contain the Home Indemnity policy under which Center Equities was also insured. Under these circumstances we are unable to determine the extent of coverage under that policy or the proper calculation of damages allocable to each of the two carriers. We must therefore remand the case to the trial court for a determination and allocation of the dam-

ages between Home Indemnity and ICNA. *Wint* v. *Fidelity & Casualty Co. of New York,* 9 Cal. 3d 257, 263, 507 P.2d 1383, 107 Cal. Rptr. 175 (1973).

There is error in part, the judgment is set aside and the case is remanded for a new trial limited to the issue of damages.

In this opinion the other judges concurred.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).