[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Whether the arbitrators exceeded their powers and/or imperfectly executed them in finding the issues of coverage in favor of the defendant.
FACTS
The following facts are alleged in the plaintiff's amended application to vacate the arbitration award and in the plaintiff's brief. The plaintiff, State Farm Mutual CT Page 4645 Automobile Insurance Company ("State Farm"), is an insurance company authorized to do business in the State of Connecticut.
On July 7, 1989, State Farm had in effect a Personal Auto Policy ("State Farm's policy") covering a 1989 Chevrolet Beretta (the "Beretta") owned by Danny C. Mobley ("Mobley"). Also on July 7, 1989, the defendant, John Fuller ("Fuller") and Mobley signed a rental agreement with AAA Car Rental ("AAA") pursuant to which AAA leased a 1984 Chevrolet Chevette (the "Chevette") to Fuller and Mobley.
On July 14, 1989, Fuller was operating the Chevette when a vehicle operated by Gerardo Estremera ("Estremera") and owned by Aurea E. Torres stopped suddenly to make a left turn. Fuller claims that Estremera never signalled and as a result of the sudden stop and the absence of a signal, Fuller struck the rear end of the vehicle operated by Estremera. Estremera was cited for failing to give a proper signal and for failing to carry a current insurance identification card. Fuller was cited for following too close (Transcript of Abritration Proceedings, October 13, 1991 ("Transcript"), pp. 15-18). Fuller asserted uninsured motorist claims under State Farm's policy providing uninsured motorist coverage in the amount of $20,000.00 and under an insurance policy issued by the Travelers Insurance Company ("the Travelers") to the Connecticut Motor Club of Hamden, Connecticut ("Traveler's policy"). Pursuant to a provision in State Farm's policy, Fuller's uninsured motorist claim was submitted to an arbitration procedure.
On October 3, 1991, the arbitrators made a written award which found that the issue of coverage in favor of Fuller, that Fuller sustained injuries and damages as a result of the accident on July 14, 1989, and that Fuller is entitled to damages in the sum of $8,647.90. The arbitrators further found that both insurance carriers are equally responsible for the payment of this award. The arbitrators further found that the defenses of both insurance companies regarding the issue of coverage were insufficient.
On October 7, 1991, State Farm was duly notified of the arbitrators' award.
On November 4, 1991, State Farm filed an application to vacate the arbitration award. State Farm alleges that the arbitrators exceeded their powers and/or imperfectly executed them pursuant to General Statutes 52-418 (c)(4) in finding the issue of coverage in favor of Fuller in three respects. First, State Farm alleges that the arbitrators improperly concluded that State Farm's policy provided uninsured motorist CT Page 4646 coverage to Fuller while Fuller operated the vehicle Fuller and Mobley leased from AAA. Second, State Farm alleges that the arbitrators improperly concluded that there was coverage under State Farm's policy even though the Chevette was not a "temporary substitute vehicle" as to Fuller as that phrase is defined in the rental agreement between Fuller and Mobley and AAA. Lastly, State Farm alleges that the arbitrators improperly concluded that State Farm and the Travelers were equally responsible for the payment of the award.
On November 25, 1991, Fuller filed a motion to confirm the arbitration award.
DISCUSSION
General Statutes 52-418 (a)(4) provides that:
 Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made.
The court is required to undertake a de novo review of legal questions raised on a motion to vacate an award rendered pursuant to compulsory arbitration under General Statutes 38-175c. Chiemliewski v. Aetna Casualty Surety Co.,218 Conn. 651, 652, 591 A.2d 101 (1991). The appropriate standard of review of the arbitrators' findings of fact is the substantial evidence test. Id., 656. "`Substantial evidence' will be found to exist if the administrative record supplies a substantial basis of fact from which the court can infer the fact in issue." Id., 661 n. 15, quoting Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639-40, 583 A.2d 906
(1990).
I. State Farm's Excess Insurance Clause
State Farm's first claim is that the arbitrators erred in finding State Farm and the Travelers equally responsible for the payment of the award because they improperly failed to give effect to the "other insurance" clause[1] in State Farm's policy, which was admitted into evidence before the arbitrators State Farm notes that the Travellers argue that their policy contained a similar clause, but also points out that the Traveller's policy was not admitted into evidence before the CT Page 4647 arbitrators. State Farm argues that because the only documentary evidence of an excess insurance clause was that contained in State Farm's policy, the arbitrators' conclusion that State Farm and the Travellers should share equally the payment of the award finds no support in the record.
State Farm cites the case of White v. Howard,573 A.2d 513 (N.J. Super A.D. 1990) in support of this claim. State Farm states that the White court held that the rental agency was the primary insurer despite the fact that the rental agreement stated that insurance coverage for the leased vehicle was to be provided under the temporary substitute provisions of the customer's personal policy. The court's holding, according to State Farm, was based on the fact that the customer's policy contained an excess insurance clause almost identical to that contained in State Farm's policy.
State Farm also argues that even if the arbitrators accepted as an evidentiary fact that the Traveller's policy to contained an excess insurance clause, State Farm argues that the arbitrators erred by not prorating liability between State Farm and the Travellers. State Farm cites Sacharko v. Center Equities Limited Partnership, 2 Conn. App. 439, 447,479 A.2d 1219 (1984), which holds that "where two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits." See also, Continental Cas. Co. v. Aetna Cas. and Sur. Co., 823 F.2d 708
(2d Cir. 1987). State Farm notes that if the arbitrators had applied the rule announced by the Sacharko court, State Farm would have been responsible for only 3.85 percent of the award rather than fifty percent.
It is clear from the rental agreement that Fuller and Mobley signed provides that the lessees' personal insurance would be primary.[2] Thus, both insurers have the benefit of an excess insurance clause. State Farm has cited no Connecticut authority for the proposition that where both the lessor's and the lessee's insurance policies contain excess insurance clauses, that the lessor's insurer should be deemed the primary insurer. In view of the conflicting excess insurance provisions, State Farm has failed to prove that the Travellers should be deemed to be the primary carrier.
II. Coverage under the "Temporary Substitute Vehicle" Provision of State Farm's Policy
State Farm argues that coverage under State Farm's policy was not triggered because State Farm's policy provided that coverage is provided only to a "covered auto" and that a "covered auto" includes a "temporary substitute vehicle" but CT Page 4648 that the vehicle leased by Fuller and Mobley is not a "temporary substitute vehicle" because a "temporary substitute vehicle" must be "in the possession of or under the control of the insured to the same extent and affect as the disabled car." State Farm concedes that the Beretta was out of normal use for repairs. State Farm points out, however, that Fuller testified before the arbitrators that he had possession and control and possession of the leased vehicle and that the Chevette was used as he wished. (Transcript, pp. 30-32.) Fuller also testified that he did not have to ask Mobley's permission to use the Chevette. (Transcript, pp. 30-32). Fuller had never used Mobley's Beretta, however. (Transcript, p. 28.) Furthermore, there was testimony that Mobley had a second car, a Toyota Celica, in which he left AAA after signing the lease. (Transcript, p. 30.) State Farm concludes that the Chevette was not issued to Mobley and Fuller as a substitute for Mobley's Beretta. State Farm argues that to require it to provide coverage to the Chevette when Mobley had no intention of using it as a substitute vehicle would be unfair to State Farm in that such a requirement would effectively make the State Farm's policy extend coverage to Fuller when it was written and rated solely for Mobley.
The issue of whether the Chevette constitutes a temporary substitute vehicle is a question of fact, and as such, the scope of review is whether there is substantial evidence in the record to support the arbitrators' findings. Fuller testified before the arbitrators that he had an agreement with Mobley to purchase Mobley's Beretta. (Transcript, p. 29.) He further testified that at the time of the rental, he did not need Mobley's permission to use the Chevette because he was "already in the contract." (Transcript, p. 31.) Fuller further testified that, although he had never driven the Beretta, he already had the keys to it. (Transcript, p. 26.) He further testified that his father had agreed to buy the car for him. (Transcript, p. 31.) Fuller also testified that GMAC holds the title to Mobley's Beretta and that he was discussing taking over Mobley's payments with GMAC and that GMAC indicated that that it would have to conduct a credit check of Fuller. (Transcript, p. 29.) Additionally, Fuller testified that Mobley indeed used the Chevette on one occasion. (Transcript, p. 32.) Although there is evidence to indicate that Mobley had agreed to sell his Beretta to Fuller and that Fuller was the primary user of the Chevette, there is substantial evidence in the record to support the arbitrators' finding that the agreement between Fuller and Mobley had not yet been consummated. In light of Mobley's use of the Chevette, there is substantial evidence in the record from which the court can infer that the Chevette constitutes a temporary substitute vehicle for Mobley's Beretta. CT Page 4649
III. Coverage under the "Temporary Substitute Vehicle" Provision of the Rental Agreement
State Farm argues that the Chevette does not constitute a "temporary substitute vehicle" as that term is defined in the rental agreement between Fuller and Mobley and AAA. State Farm argues that Fuller was not using the Chevette as a substitute for his vehicle while Fuller's vehicle was under repair. State Farm points out that Fuller testified that he did not own a car at the time of the rental. (Transcript, pp. 26-27.) State Farm further points out that the car rental application states:
 If this is a replacement vehicle — Temporary Substitute Vehicle — I understand that Club Leasing Services does not carry insurance for me on the vehicle I am renting and that my own insurance must cover me since I am renting this vehicle as a temporary substitute automobile since my original vehicle is out of service. I further understand that should my insurance fail for any reason, I will be solely liable for damages incurred. Otherwise, it shall be the sole responsibility of Club Leasing Services to insure the vehicle.
(Amended Application, Exhibit A. Rental Agreement.) State Farm argues that because the vehicle was not leased to Fuller as a temporary substitute vehicle, under the language of the rental agreement it was the sole responsibility of AAA or Club Leasing Services to insure the vehicle.
There is substantial evidence in the record to indicate that the Chevette constitutes a temporary substitute vehicle as to Mobley. There is evidence that Mobley allowed Fuller to be the primary user of the Chevette pursuant to an unconsummated agreement between Fuller and Mobley to buy and sell Mobley's Beretta. State Farm has cited no authority which supports the proposition that a vehicle which is treated as a temporary substitute vehicle as to one co-renter of the vehicle is not treated as a temporary substitute vehicle as to another co-renter Furthermore, in the present case, there is substantial evidence to indicate that Fuller was under a contract to purchase Mobley's Beretta. Accordingly, State Farm has failed to prove that the provision of the rental agreement which provides that Club Leasing Services is to provide the primary insurance is applicable here.
IV. Failure to Contest the Issues Raised by State Farm CT Page 4650
State Farm argues that the failure of Fuller to respond to the merits of the issues raised by State Farms' Amended Application to Vacate entitles State Farm to the relief of the vacating of the arbitration of the award.
Although Fuller's motion to confirm and memorandum in opposition to the amended application to vacate solely attack the scope of review involved, State Farm has cited no authority for the proposition that the failure of Fuller to address other issues raised by State Farm entitles State Farm to the relief requested. Furthermore, because the burden is on State Farm to show that the arbitrators exceeded or improperly exercised their powers, State Farm is not entitled to the requested relief on the ground alleged.
V. Responsibility for the Award
It is implicit in the arbitrators finding that "both respondent insurance carriers are equally responsible for the payment of this award" that the arbitrators found that State Farm and the Travellers had equally contemplated the risk at hand. Connecticut law requires that "where two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits." Sacharko v. Center Equities Limited Partnership, 2 Conn. App. 439, 447,479 A.2d 1219 (1984); Continental Cas. Co. v. Aetna Cas. and Sur. Co.,823 F.2d 708, 712 (2d. Cir. 1987). Accordingly, the arbitrators exceeded their authority by determining that State Farm and the Travellers must pay equal sums to Fuller.
CONCLUSION
The motion to vacate the arbitration award is granted and the motion to confirm the arbitration award is denied. The Court treats the motion to vacate as a motion to correct inasmuch as the motion challenges, in part, the apportionment of the payment of the award between the two insurance carriers. Accordingly, the court corrects the arbitration award by apportioning payment of 2/52 of the award to State Farm and 50/52 of the award to the Travellers.
AUSTIN, J.