[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court, after trial, is the third count of a declaratory judgment action brought by the plaintiff, Security Insurance Company of Hartford (Security), against the defendant ACMAT Corporation (ACMAT). Security and ACMAT filed a stipulation of facts and memoranda outlining their claims regarding declaratory judgment as to the third count. The court subsequently heard oral argument.
 The Factual Setting
Over one hundred claimants have sued ACMAT (and other defendants) for bodily injury allegedly due to exposure to asbestos without specifying dates of injury. See In re Bridgeport Asbestos Litigation, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 332364 (Bridgeport asbestos litigation). Four insurers, Travelers Insurance Company f/k/a Aetna Casualty Surety Company (Aetna), Liberty Mutual Insurance Company (Liberty), CIGNA and Security, have agreed to participate in the defense of ACMAT in said litigation. In the present CT Page 6036 action, Security seeks a declaratory judgment establishing ACMAT's obligation to assume an equitable portion of the costs to defend it.
Security originally filed a two count declaratory judgment action on August 26, 1996, against both ACMAT and Lumbermens Mutual Casualty Company (Lumbermens). Count one alleged that ACMAT and/or Lumbermens should be held responsible for that equitable share of defense costs attributable to the period of time covered by the Lumbermens insurance policy to ACMAT. Count two alleged that ACMAT should be held responsible for that equitable share of the defense costs proportionate to the period of time after April 1, 1985, when ACMAT had no asbestos coverage.
The court, Graham, J., granted Lumbermen's motion for summary judgment as to count one because a buy-back agreement with ACMAT released Lumbermens from all obligations under its insurance policy. Security's cross motion against ACMAT as to counts one and two was denied because of issues of material fact in dispute. See Security Ins. Co. of Hartford v.Lumbermens Mutual Casualty Co., Superior Court, judicial district of New Britain, Docket No. 475565 (May 8, 1998, Graham, J.). In a second ruling, the court, Graham, J., denied Security's renewed motion for summary judgment on procedural grounds. See Security Ins. Co. of Hartfordv. Lumbermens Mutual Casualty Co., Superior Court, judicial district of New Britain, Docket No. 475565 (February 22, 1999, Graham, J.).[1]
In a third ruling, the court, Graham, J., granted Security's second renewed motion for summary judgment against ACMAT on count one finding "that ACMAT is legally obligated to . . . assume an equitable share of the costs of defending the Bridgeport litigation as a result of having released Lumbermens from the latter's obligation to defend." The court denied Security's motion for summary judgment against ACMAT as to count two, finding that ACMAT is not responsible for an equitable share of defense costs proportionate to the period of time after 1985 when asbestos exposure coverage was not available. See Security Ins. Co. ofHartford v. Lumbermens Mutual Casualty Co., Superior Court, judicial district of New Britain, Docket No. 475565 (July 12, 1999, Graham, J.).
On November 30, 1999, Security filed an amended complaint adding a third count against the remaining defendant, ACMAT. The second count was withdrawn prior to trial. The third count seeks a declaration that ACMAT is obligated to assume an equitable share of the cost of its defense because of the period of time from 1951, through 1967, during which time ACMAT lost or destroyed its insurance policies and for which no insurer has provided coverage. Only the third count is still pending before this court.
For purposes of trial evidence, the parties filed a stipulation of CT Page 6037 facts, dated March 6, 2000 (the stipulation)[2]. In addition to those facts previously found in the court's prior memorandum of decision[3]
and those stated above, pursuant to the stipulation and the judicial admissions contained in the pleadings, the court also finds as follows. Acoustical Materials Corporation was founded on March 16, 1951. On December 10, 1969, Acoustical Materials Corporation amended its Certificate of Incorporation to change its name to ACMAT Corporation (ACMAT). This change in name was not accompanied by a change in corporate structure, so that ACMAT has been in existence since March 16, 1951.
Under the claims in the Bridgeport asbestos litigation, ACMAT is potentially liable to the underlying claimants for bodily injury during the period March 16, 1951, through May 1, 1996. Asbestos-related injury insurance coverage was available to ACMAT for the period March 16, 1951, through April 1, 1985. ACMAT had asbestos-related injury coverage from March 16, 1951, through April 22, 1959, but either lost or otherwise destroyed these policies. ACMAT does not know who provided it with asbestos-related injury coverage during this period, nor has it made a demand on any insurance carrier from this period to provide ACMAT with a defense or to pay a pro rata share of defense costs in the pending Bridgeport Asbestos Litigation.
ACMAT alleges that Liberty provided ACMAT with asbestos-related injury coverage, from April 22, 1961, through January 1, 1964, but ACMAT either lost or otherwise destroyed these policies. ACMAT has demanded that Liberty provide it with a defense or pay a pro rata share of defense costs in the Bridgeport asbestos litigation for such time. Liberty refuses to defend ACMAT or to pay a pro rata share of defense costs in the Bridgeport Asbestos Litigation for the period April 22, 1961, through January 1, 1964.
ACMAT alleges that Greater New York Insurance Company (Greater New York) provided ACMAT with asbestos-related injury coverage from January 1, 1964, through January 1, 1968, but ACMAT either lost or otherwise destroyed these policies. ACMAT has demanded that Greater New York provide it with a defense or pay a pro rata share of defense costs in the Bridgeport asbestos litigation. Greater New York refuses to defend ACMAT or to pay a pro rata share of defense costs in the Bridgeport asbestos litigation, claiming that it did not issue ACMAT asbestos-related coverage during this period.
Aetna provided such coverage for the period January 1, 1968, through January 1, 1972; Security for the period January 1, 1972, through January 1, 1976; Liberty for the period January 1, 1976, through January 1, 1979 and CIGNA for the period April 15, 1981, through April 1, 1985.[4] They each agreed to participate in the defense of the Bridgeport asbestos CT Page 6038 litigation (collectively the participating insurers). The conditions for declaratory judgment set forth in § 17-55 of the rules of practice have been met.
 The Parties' Arguments
Seeking judgment in its favor on the third count of its amended complaint, Security argues that ACMAT should equitably contribute to its defense costs as a result of those periods of time for which ACMAT lost or otherwise destroyed the insurance policies for ACMAT's asbestos-related injury coverage. Security contends that in "continuous trigger" situations[5], all policies in effect during the period of the trigger are implicated and all liable insurance companies are required to contribute their pro rata share of the costs of defense. Ultimately, Security argues that ACMAT should, therefore, be liable for a pro rata share of its defense costs corresponding to the period of time for which it cannot produce evidence of insurance coverage.
ACMAT argues, to the contrary, that it "is not obligated to contribute to the defense because Security's obligation to defend is indivisible and extends to both covered and uncovered claims." (ACMAT's brief, p. 2.) ACMAT further argues that the proration to the insured doctrine applied in Stonewall Ins. Co. v. Asbestos Claims Management, 73 F.3d 1178 (2nd Cir. 1995), should be limited to circumstances in which the insured made a conscious decision to assume the risk of being self-insured.
The doctrine of equitable contribution guides the court in allocating the defense costs among the potentially responsible parties. "The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of thecommon obligation." (Emphasis in original; internal quotation marks omitted.) Crotta v. Home Depot, Inc., 249 Conn. 634, 639-40, 732 A.2d 767
(1999). "[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers. . . ." Fireman's Fund Ins. Co. v. MarylandCasualty Co., 65 Cal.App. 4 1279, 1289 (1998).
The present case involves a continuous trigger situation such that all asbestos-related injury policies issued during the extended exposure period have been triggered for coverage and all companies that issued such policies are responsible for defense costs related to the Bridgeport asbestos litigation. Derived from the doctrine of equitable contribution CT Page 6039 is "[t]he general rule [in Connecticut] that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense." Sacharko v. Center Equities Ltd. Partnership, 2 Conn. App. 439,447, 479 A.2d 1219 (1984). Accordingly, the court will apply the doctrine of equitable contribution to allocate responsibility for defense costs in the Bridgeport asbestos litigation.
There is no appellate case law on the issue of allocation among multiple insurers in Connecticut. The issue has been addressed by the Superior Court; see Metropolitan Life Ins. Co. v. Aetna Casualty andSurety Co., Superior Court, judicial district of New London at Norwich, Docket No. 115305 (April 16, 1999, Koletsky, J.); Reichhold Chemicals,Inc. v. Hartford Accident and Indemnity Co., Superior Court, judicial district of New Britain at New Britain, Docket No. 085884 (October 1, 1998, Aurigemma, J.) (Reichhold I); Reichhold Chemicals, Inc. v. HartfordAccident and Indemnity Co., Superior Court, judicial district of New Britain at New Britain, Docket No. 085884 (February 11, 1999, Aurigemma,J.) (Reichhold II) and, to a degree, by the Second Circuit Court of Appeals. See Stonewall Ins. Co. v. Asbestos Claims Management, supra,73 F.3d 1178; DiCola v. American Steamship Owners Mutual Protection andIndemnity Association, Inc., 158 F.3d 65 (2nd Cir. 1998) (PrudentialLines).
In Stonewall, the Second Circuit Court of Appeals noted that the District Court's decision to allocate responsibility for liability among the various insurers was not appealed: "Confronted with multiple insurance policies covering the same claim, the District Court decided, on motion for summary judgment, that the triggered policies' obligations were to be prorated based upon the policies' respective triggered time periods. Specifically, the District Court ruled that each triggered policy was responsible for only a pro rata share of [the insured's] liability to a particular claimant. The share was determined by multiplying the judgment or settlement by a fraction that has as its denominator the entire number of years of the claimant's injury, and as its numerator the number of years within that period when the policy was in effect."Stonewall Ins. Co. v. Asbestos Claims Management, supra, 73 F.3d 1202.
Later, in Prudential Lines, the Second Circuit Court of Appeals acknowledged that it had never addressed the allocation issue directly; see DiCola v. American Steamship Owners Mutual Protection and IndemnityAssociation, Inc., supra, 158 F.3d 84 n. 13; and reviewed cases from other jurisdictions. "The courts that have endorsed allocation when the loss is paid have generally been motivated by considerations of equity and policy, rather than contract wording. First, the courts have sought to ensure that a single insurer underwriting a small proportion of the CT Page 6040 risk does not get saddled with the full loss . . . a loss that may prove uncollectible from other companies. Second, courts enforce allocation to require the insured to absorb losses for periods when it was self-insured. . . . Third, these courts see allocation as the most efficient way to assign liability among policies, reasoning that any contribution proceeding will involve many of the same issues that are raised in the initial liability proceeding, and that it is more efficient to deal with these issues in a single proceeding." (Citations omitted.) Id., 85. Because none of those complicating factors were present inPrudential Lines, the court held that "in the circumstances presented, Prudential has the right to demand that a policy pay fully coverage for each insurance claim in which the underlying claimant suffered asbestos exposure and therefore asbestos injury during the policy period." (Emphasis added.) Id., 86.
This court finds that Prudential Lines is meant to be applied on its facts and does not reverse Stonewall in cases such as this in which those complicating factors do exist. See also Metropolitan Life Ins. Co. v.Aetna Casualty and Surety Co., supra, Superior Court, Docket No. 115305 (holding that Prudential Lines applies only to its unique facts and applying allocation); Reichhold Chemicals, Inc. v. Hartford Accident andIndemnity Co., supra, Superior Court, Docket No. 085884 (February 11, 1999) (The plaintiffs "reliance on [Prudential Lines] is misplaced because the decision was specifically limited to its unique facts and did not change existing New York law in any way."). Additionally,Metropolitan Life Ins. Co. v. Aetna Casualty and Surety Co., supra, Superior Court, Docket No. 115305, held that "Connecticut favors [the] pro rata allocation approach. . . ."
Accordingly, this court finds that the pro rata allocation approach has been adopted by Connecticut courts and the Second Circuit, when complicating factors exist, as here. This court agrees with those cases finding allocation to be the most efficient method of assigning liability in a case involving several insurance companies and a continuous trigger situation.
The present case concerns the allocation of defense costs, not liability as addressed by Stonewall and Prudential Lines. ACMAT's argument that it "is not obligated to contribute to the defense because Security's obligation to defend is indivisible and extends to both covered and uncovered claims"; (ACMAT's brief, p. 2); does not convince the court. This court finds the reasoning supporting the allocation of liability when complicating factors exist equally persuasive as to the allocation of defense costs. In the present case, Security insured ACMAT for only a limited portion of a lengthy period of exposure alleged in the Bridgeport asbestos litigation. Several of the policies for the relevant CT Page 6041 coverage years have been lost or destroyed such that Security may never be able to collect reimbursement. ACMAT accepted the risk of self-insurance for several years of coverage relevant to the Bridgeport asbestos litigation under its buy-back agreement with Lumbermens and this court has previously found that ACMAT must pay its pro rata share for that period of time. See Security Ins. Co. of Hartford v. LumbermensMutual Casualy Co., supra, Superior Court, Docket No. 475565 (July 12, 1999).
Connecticut law also supports allocating defense costs. "The general rule is that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense." Sacharko v. Center Equities Ltd.Partnership, supra, 2 Conn. App. 447; see also Hanover Ins. Co. v.Firemen's Fund Ins. Co., 217 Conn. 340, 353, 586 A.2d 567 (1991) (contribution is equitable in origin and actions for contribution are appropriate when one party is obligated to pay an entire sum for which others share a "common obligation"). "`[T]he aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others.' Fireman's Fund Ins. Co. v. MarylandCasualy Co., 77 Cal.Rptr.2d 296, 306 (1998)." See Security Ins. Co. v.Lumbermens Mutual Casualty Co., supra, Superior Court, Docket No. 475565 (July 12, 1999). This court has previously determined that the logic of liability proration to an insured applies with equal force to the allocation of defense costs to the insured. See id. Accordingly, this court finds that the pro rata allocation approach should be applied in the present matter.
Turning to the precise issue before the court, the parties dispute responsibility for defense costs for a period of time during which asbestos-related injury insurance coverage was available and policies were purchased, but the policies have since been lost or destroyed. ACMAT has made demands on Liberty and Greater New York for the years for which ACMAT claims they provided coverage, but both companies have denied the obligation. ACMAT does not know which companies issued the other lost policies for earlier years. Both situations leave ACMAT in the same position with regard to coverage for the current defense costs: no insurance company has undertaken to defend it for those years.
The court begins by distinguishing the present issue from those issues previously determined in this case. The court's decision as to the first count concluded that ACMAT is responsible for equitable contribution for that period of time for which it purchased insurance coverage from Lumbermens but later released it for a significant sum of money, through a buyback agreement. See Security Ins. Co. of Hartford v. LumbermensCT Page 6042Mutual Casualy Co., supra, Superior Court, Docket No. 475565 (July 12, 1999). The court's decision as to the second count concluded that ACMAT is not responsible to equitably contribute to defense costs because of that period of time after 1985 when asbestos exposure insurance coverage was not available. See id. In contrast, the present issue as to the third count concerns a period of time in which asbestos exposure insurance coverage was available, was purchased by ACMAT and ACMAT never released the insurance companies from their obligation.
There is no precedent on this issue. Other cases which have considered apportioning liability in exposure cases have imposed liability on the insured when the insured made a calculated business decision to forego insurance coverage. See, e.g., Stonewall Ins. Co. v. Asbestos ClaimsManagement, supra, 73 F.3d 1178 (apportioning liability for damages; the present case concerns apportioning liability for defense costs).Stonewall provides this court with a starting place for its analysis, however, it does not go far enough to determine the present issue.
In the present case, ACMAT did not choose to forego coverage. ACMAT purchased insurance, but the policies were then lost or destroyed. Security has not alleged or proven that the policies are unavailable due to a conscious business decision by ACMAT. The circumstances surrounding that loss or destruction are not in evidence. What is clear is that ACMAT, not Security or the other insurers who are currently providing a defense, "lost or otherwise destroyed these policies." (Stipulation, ¶¶ 3-5.)
The court's analysis cannot end there, however. The court must look at the facts and circumstances of the present matter to determine in equity upon which parties, and to what extent, the burden of contributing to the costs of defense should fall. As contribution is equitable in nature; seeCrotta v. Home Depot, Inc., supra, 249 Conn. 639-40; "[t]o prevail, it is incumbent on the plaintiff to prove that, in equity, the [defendant] rather than [the plaintiff] should bear the loss." Manconi v. Prescott, Superior Court, judicial district of New Haven at New Haven, Docket No. 324471 (August 12, 1992, Zoarski, J.). "One who institutes suit against another must be prepared to show a prior or superior equity in himself." (Internal quotation marks omitted.) Lockwood v. Nagy Bros., Inc.,150 Conn. 691, 693, 186 A.2d 82 (1962); Manconi v. Prescott, supra, Superior Court, Docket No. 324471.
For the following reasons, the court finds that equity requires that ACMAT be held responsible to contribute an equitable share of the defense costs and that such be calculated by including as ACMAT's responsibility all periods prior to 1985 for which the insurer who provided insurance coverage cannot be identified or for which ACMAT lost or destroyed the CT Page 6043 policy and the alleged insurer has refused coverage.
ACMAT is the party which could have prevented the loss or destruction of the policies. ACMAT through its own actions or inactions ("lost or otherwise destroyed these policies") has put itself in the position of being, in essence, uninsured for a substantial period of time.
ACMAT is in the best position to pursue claims against any insurance companies it believes issued coverage for the disputed years. ACMAT has the standing to initiate such a suit and has the best access to the information that would be necessary to prove a claim against such a company. Indeed, the only known evidence of the identity of the companies that issued the lost policies is whatever evidence upon which ACMAT bases its claim against them. ACMAT is also best positioned to pursue bills of discovery[6] against its suspected insurers.
Security and its fellow participating insurers bear no blame for the loss of ACMAT's insurance policies. They are not as well situated as ACMAT to pursue claims against insurers that deny coverage or to pursue bills of discovery against suspected insurers of ACMAT. It would be grossly inequitable to make them bear the financial loss of ACMAT's actions or inactions that have rendered ACMAT essentially uninsured for a period when asbestos-related injury insurance coverage was available.
Accordingly, the court is compelled by equitable principles to impose liability on ACMAT for the share of defense costs proportionate to the years for which the relevant insurance policies have been lost or destroyed. In so doing, the court leaves ACMAT in at least partial control of such financial obligations, for to the extent that ACMAT succeeds in persuading or forcing an insurer to acknowledge coverage for a portion of such time, its costs will be diminished accordingly.
The court adopts the method of calculating equitable allocation set forth in Stonewall Ins. Co. v. Asbestos Claims Management, supra,73 F.3d 1178. The court in Stonewall "implement[ed] proration-to-the-insured by obliging [the self-insured] to pay a share of each claim represented by a fraction that has as its denominator the number of years of the injury up to 1985, and as its numerator the number of those years in which [the self-insured] was uninsured. . . ." StonewallIns. Co. v. Asbestos Claims Management, supra, 73 F.3d 1204.[7]
ACMAT's equitable share of the defense costs is represented by a fraction that has as its denominator the number of months during the period March 16, 1951, the date on which ACMAT came into existence, until April 1, 1985, at which time asbestos-related injury insurance became unavailable to ACMAT. The denominator, the number of months of ACMAT's CT Page 6044 existence when asbestos related injury coverage was available, totals 408.5 months.
The numerator is the total of the number of months for which ACMAT was essentially self-insured by reason of the Lumbermens policy buy-back (the first count) and the loss or destruction of its earlier insurance policies (the third count). These form the bases of ACMAT's equitable obligation to contribute to the costs of defense.
The numerator is calculated as follows: The policies for March 16, 1951, through April 22, 1959, were lost or destroyed; (see Stipulation, ¶ 3); a total of ninety-seven months. The policies for April 22, 1961, through January 1, 1964, were lost or destroyed and coverage refused; (see Stipulation, ¶ 4); a total of 32.5 months. The policies for January 1, 1964, through January 1, 1968, were lost or destroyed and coverage refused; (see Stipulation, ¶ 5); a total of forty-eight months. These total to 177.5 months under the third count for which insurance coverage can not be established and ACMAT is responsible in equitable contribution, or 43.45% of the denominator of 408.5 months.
In addition, the court has previously held that ACMAT is responsible under the first count in equitable contribution for January 1, 1979, through April 15, 1981, the period for which ACMAT accepted responsibility under the buy-back agreement with Lumbermens. See SecurityIns. Co. of Hartford v. Lumbermens Mutual Casualy Co., supra, Superior Court, Docket No. 475565 (July 12, 1999). That period is 27.5 months, or 6.73% of 408.5 months. In total then ACMAT is responsible in equitable contribution toward the costs of defense for 205 months, which is 50.18% of 408.5 months.
Accordingly, the court finds for the plaintiff and declares that ACMAT is legally obligated to join the participating insurance carriers in assuming its equitable share, being 50.18%, of all past, present and future defense costs associated with the defense of ACMAT in the Bridgeport asbestos litigation. The court orders ACMAT to reimburse 50.18% of the total reasonable defense costs paid to date by its participating insurance carriers to defend ACMAT in the Bridgeport asbestos litigation, such reimbursement to be allocated equitably among the participating insurance carriers.
 James T. Graham Superior Court Judge