**NATIONAL CASUALTY COMPANY, Petitioner,**

v.

**GREAT SOUTHWEST FIRE INSURANCE COMPANY and Hartford Accident and Indemnity Company, Respondents.**

No. 91SC562.

Supreme Court of Colorado, En Banc.

July 20, 1992.

Walberg & Dagner, P.C., Wendelyn K. Walberg, Englewood, for respondent Great Southwest Fire Ins. Co.

Downey & Knickrehm, P.C., Kate E. Knickrehm, Gregg A. Greenstein, Denver, for respondent Hartford Acc. and Indem. Co.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review the decision in *National Casualty Co. v. Great Southwest Fire Insurance Co.*, 821 P.2d 877 (Colo.App.1991). The court of appeals affirmed the summary judgment entered by the district court in favor of Great Southwest Fire Insurance Company (Great Southwest) and Hartford Accident and Indemnity Company (Hartford), concluding that they were not responsible for the defense and settlement of the underlying lawsuit against the City of Craig, Colorado. The court of appeals concluded that no claim was made while the policy was in effect[1] and that emotional distress did not constitute bodily injury within the meaning of a Hartford policy. We reverse in part, affirm in part, and remand with directions.

I

On August 27, 1984, the City of Craig notified Carol Jean Reutter, a police officer for the city, that her employment was being terminated. On September 12, 1984, Reutter wrote to the city administrator, stating that she had been "wrongfully terminated with no just cause" and requesting that she be "reinstated, with all charges dropped." Reutter was placed on suspension without pay pending resolution of the grievance. On or about September 26, 1984, the city denied Reutter's grievance and finalized her termination.

On March 21, 1985, Reutter filed a notice of claim with the city under the governmental immunity act, asserting that she had been injured as a result of her dismissal and seeking damages for her wrongful termination. § 24–10–109, 10A C.R.S. (1988). The city notified National Casualty

Semple & Jackson, P.C., Franklin A. Nachman, Denver, for petitioner.

**1.** The Great Southwest policy was a "claims made policy," which only provides coverage for claims made during the time the policy is in effect.

Co. (National), Great Southwest, and Hartford of the letter.

On June 27, 1986, Reutter filed suit in the United States District Court for the District of Colorado against the city, the police department, the police chief, the city administrator, and the city council. She sought damages for violation of civil rights, wrongful discharge, breach of contract, willful and wanton conduct, retaliatory discharge, and outrageous conduct. The city moved for summary judgment on the ground that Reutter's notice of claim was untimely under § 24–10–109(1) (requiring a claimant to notify the governmental entity within 180 days of the date the injury was discovered that an action would be filed) because it was sent more than 180 days after her termination on August 27, 1984. The district court denied summary judgment and held that the claim accrued on September 26, 1984, when the final decision was made to terminate Reutter, and that notice was timely filed.

The parties agreed to a settlement and National, on behalf of the city, paid Reutter $162,500, $35,000 being allocated to lost wages and the remainder as compensation for emotional distress, personal embarrassment, mental and physical strain, and injury to her health. National, as the insurance carrier for the city, both defended the city and paid the settlement. National then filed suit against Great Southwest and Hartford to recover a pro rata share of its defense costs and to obtain contribution or equitable subrogation of the amount paid to settle Reutter's claims.

The city was insured during different periods by Great Southwest, Hartford, and National, and the issue is whether Reutter made a claim that was covered by any policy other than National's. Great Southwest insured the city for wrongful acts under a claims made Public Officials Liability Policy for the period beginning June 10, 1984, and ending February 15, 1985. National insured the city under a similar policy, its Public Officials and Employees Legal Liability Policy, from February 14, 1985, through June 10, 1985. This policy contained a subrogation clause. Hartford

insured the city against damages for bodily injury under a Comprehensive Business Policy issued for the period from June 10, 1982, to June 10, 1985. National provided similar coverage under its Comprehensive Law Enforcement Liability Policy, for the period February 15, 1985, through June 10, 1985. National's policy contains provisions both for other insurance and for subrogation.

National's complaint alleged that Reutter's claim against the city fell within the coverage provided by Great Southwest and Hartford, but that those companies had refused to defend the claims or to contribute to the settlement and defense costs. National sought declaratory judgment to determine the liability of Great Southwest and Hartford for breach of their duty to defend and to estop Great Southwest and Hartford from denying coverage. Alternatively, National contended that Great Southwest and Hartford's insurance policies provided coverage of the claims. National also asserted that Great Southwest and Hartford breached their contracts with the city by failing to defend the city in the *Reutter* litigation. National contended that it was subrogated to the rights of the city and had the right to assert claims against the policies issued by Great Southwest and Hartford because it paid the $162,500 in settlement of the *Reutter* litigation.

The trial court held that Reutter's request for grievance review did not constitute a claim or notice of claim within the meaning of the Great Southwest policy. Therefore, the court concluded, notice of the claim was not submitted within the period covered by the Great Southwest policy. The Great Southwest policy was a claims made policy for which "coverage exists only for claims made during the policy period," rather than an occurrence policy which covers occurrences during the life of the policy, and accordingly, Great Southwest had no obligation to defend or provide coverage for Reutter's claim. The trial court granted summary judgment for Great Southwest, determining that Great Southwest had no contractual obligation to provide contribution and, therefore, that

National had no right of contribution against Great Southwest. The trial court granted summary judgment in favor of Hartford, finding that emotional distress did not constitute bodily injury within the terms of the policy. The court of appeals affirmed the trial court.

We must determine whether Reutter's claim against the city was made within Great Southwest's policy period and was covered under the terms of that policy. Whether emotional distress constitutes bodily injury within the meaning of the Hartford policy issued to Reutter is the second question. Based upon our answers to these two questions, we must address whether National had a right of contribution or subrogation against Great Southwest or Hartford for their failure to defend and pay the *Reutter* claims.

## II

Great Southwest's Public Officials Liability Policy was issued for the period beginning June 10, 1984, and ending February 15, 1985, for claims made while the policy was in effect. The policy's insuring agreement states:

> If, during the policy period, any claim or claims are first made against the INSUREDS as a result of any WRONGFUL ACT, the Company will pay ... all loss which the INSURED shall become legally obligated to pay as damages. The Company shall have the right and duty to defend any suit from such WRONGFUL ACT....

Section VI, the notice of claim provision in the policy provides:

> If, during the policy period ... any INSUREDS shall receive written or oral notice from any party that it is the intention of such party to hold the INSUREDS responsible for a WRONGFUL ACT and the INSUREDS give written notice to the Company of the receipt of such written or oral notice within one year, then any claim which may subsequently be made against the INSUREDS arising out of such WRONGFUL ACT shall, for the purpose of this policy, be treated as a claim made during the POLI-CY YEAR in which such notice was given....

National contends that Reutter made a claim for wrongful termination on August 27, 1984, when she requested reinstatement. Southwest contends that Reutter's letter of August 27, 1984, requesting reinstatement did not constitute a claim because the termination was not finalized until September 26, 1984, and that the claim was not made until March 21, 1985, after the policy period. We disagree with Great Southwest.

The determination of whether a claim was made within the period of Southwest's coverage depends on the construction of the provisions in the insurance policy based on principles of contract interpretation. *Cf. Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991) (determining the existence of a duty to defend). The insurance policy does not explicitly define the term "claim." Therefore, its interpretation depends on whether the policy provisions are ambiguous. *See id.* An unambiguous provision in an insurance policy must be given its plain and ordinary meaning. *Wota v. Blue Cross & Blue Shield*, 831 P.2d 1307, 1309 (Colo.1992); *Terranova v. State Farm Mut. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990).

The definition of a claim is an issue of first impression in Colorado. The majority of courts have interpreted a claim as a demand for something as a right. *See, e.g., Phoenix Ins. Co. v. Sukut Constr. Co., Inc.*, 136 Cal.App.3d 673, 186 Cal.Rptr. 513 (1982); *see also Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831 (Mo.App.1983). In contrast, a mere request for information has been held not to constitute a claim. *See, e.g., Winkler v. National Union Fire Ins. Co.*, 930 F.2d 1364 (9th Cir.1991); *Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864 (9th Cir. 1979); *cf. Civic Assoc., Inc. v. Security Ins. Co.*, 749 F.Supp. 1076 (D.Kan.1990) (letter to insured expressing concern about the firm's ability to complete projects did not constitute a claim where it made no demand for money or services and did not allude to any specific damages).

In the *Katz Drug Co.* case an employee of the insured demanded, during the relevant policy period, that the insured provide the employee with insurance coverage as part of an employee benefits program. The court held that although suit was not filed until after the policy period, the demand satisfied the requirements of an "errors and omissions" insurance policy for the administration of the insured's employee benefits program. 647 S.W.2d at 836. The dispute centered on whether the policy equated a claim with a suit. The court stated that the language would be redundant if the terms were equivalent, because both appeared in the same provision. The meaning most favorable to the insured was that a claim is "a demand for some asserted right." *Id.* at 835.

In *Phoenix Insurance Co. v. Sukut Construction Co., Inc.* the claimant asked an attorney, who was insured by Mission Insurance Company, to correct a problem in a mechanic's lien the attorney had drafted, but he refused. The claimant later notified the attorney, who had changed his insurance carrier to Phoenix Insurance Company, "that he was holding him responsible for damages resulting from the defective lien" and filed a legal malpractice action. 186 Cal.Rptr. at 514. The California Court of Appeals determined that the claimant's request that the attorney cure the problems resulting from the mechanics lien constituted a claim and that Mission was responsible for defending the action and for any resulting liability. The court distinguished the request for work from a request for explanations or new services. *Id.* at 515.

█ In her letter of September 12, 1984, Reutter stated that she had been wrongfully terminated and requested that she be reinstated with all charges dropped. Reutter's request for reinstatement was a demand made to enforce a right and, as such, was a claim. *See id.* Therefore, a claim was made during the term of the Great Southwest policy, and Great Southwest is responsible for defense costs and must provide liability coverage.

The court in *Edinburg Consolidated I.S.D. v. INA,* 806 S.W.2d 910 (Tex.Ct.App. 1991), followed the same reasoning in addressing similar facts. Pacific Employers Insurance Company issued a claims made policy for a term beginning June 9, 1981. In order for a claim to be covered under the policy, the claim must have been "FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD," and the insured must not have had knowledge of the act, error, omission, or bodily injury that gave rise to the claim. *Id.* at 912. The policy did not specifically define the term "claim." The Texas Court of Appeals determined that a claim was made when a teacher requested the school district's board of trustees to review his termination and subsequently appealed to the Texas Education Agency on March 30, 1981, requesting reinstatement, back pay, and damages. *Id.* at 913. Initiation of litigation was not necessary. Since the claim was made against the insured prior to the effective date of the policy, it was not covered by Pacific Employers. *Id.*

The language of Great Southwest's policy provides greater latitude in the presentment of a claim that is subject to coverage under the policy. The policy states:

> If, during the policy period ... any INSUREDS shall receive written or oral notice from any party that it is the intention of such party to hold the INSUREDS responsible for a WRONGFUL ACT...., then any claim which may subsequently be made against the INSUREDS arising out of such WRONGFUL ACT shall ... be treated as a claim made during the POLICY YEAR in which such notice was given....

Reutter's August 27, 1984, letter requesting reinstatement constituted notice of her intent to hold the city responsible for her termination such that any subsequent claim must, under the policy, be treated as made during the effective term of the policy. The city's decision to change Reutter's status to suspension without pay pending review of the termination does not vitiate the notice. The trial court finding in *Reutter* that the wrongful termination action accrued on September 26 is inapposite be-

cause Reutter had already given notice of her intent to hold the city responsible.

### III

The city was also insured for liability coverage for bodily injury under a Comprehensive Business Policy issued by Hartford for the period from June 10, 1982, to June 10, 1985. The Hartford policy provided:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of ... *bodily injury* ... to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury....

The court of appeals affirmed summary judgment in favor of Hartford, holding that the term "bodily injury" in the policy does not encompass purely emotional harm. We agree.

■ In the absence of ambiguity, the court will not construe a provision in an insurance policy contrary to the plain meaning of the language. *Wota v. Blue Cross & Blue Shield*, 831 P.2d 1307, 1309 (Colo.1992); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). "Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1191 (Colo.1991) (citing *Northern Ins. Co. v. Ekstrom*, 784 P.2d 320, 323 (Colo.1989)). However, mere disagreement of the parties does not establish an ambiguity. *Wota*, 831 P.2d at 1309; *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680 (Colo.1989).

■ The Hartford policy defines bodily injury as "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." This court has not previously interpreted the term "bodily injury." The majority of courts that have interpreted bodily injury as it is used in the Hartford policy have determined that it covers physical injury and does not include claims for purely nonphy-

sical or emotional harm. *See, e.g., West Am. Ins. Co. v. Bank of Isle of Wight*, 673 F.Supp. 760 (E.D.Va.1987) ("bodily injury" provision in policy did not cover suit for emotional distress based on wrongful termination); *American & Foreign Ins. Co. v. Church Sch.*, 645 F.Supp. 628 (E.D.Va. 1986) (plain meaning of "bodily injury" does not cover claim for purely emotional injury even though bodily contact alleged); *Rolette County v. Western Cas. & Sur. Co.*, 452 F.Supp. 125 (D.N.D.1978) (no duty to defend on basis of bodily injury policy provisions where no bodily injury alleged in complaint; distinguishing "bodily injury" from broader "personal injury"); *United Pac. Ins. Co. v. First Interstate Bancsystems*, 690 F.Supp. 917 (D.Mont.1988) (claims for physical and emotional stress in wrongful termination suit do not trigger coverage for bodily injury, sickness, or disease); *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439 (1986) (emotional distress from alleged illegal discharge due to sex and age discrimination). Only a few courts, which we decline to follow, have determined that bodily injury includes emotional distress when there is no physical impact, fear of physical harm, or physical manifestation of emotional distress. *See Morrison Assurance Co. v. North Am. Reinsurance Corp.*, 588 F.Supp. 1324 (N.D.Ala.1984), *aff'd*, 760 F.2d 279 (11th Cir.1985); *cf. Wolfe v. State Farm Ins. Co.*, 224 N.J.Super. 348, 540 A.2d 871 (App.Div. 1988) (plaintiff who watched daughter die after pulling her from car in which she had been exposed to carbon monoxide suffered bodily injury from emotional distress); *Loewenthal v. Security Ins. Co.*, 50 Md. App. 112, 436 A.2d 493 (1982) (insurance company insuring against bodily injury obligated to defend against claims of pain, suffering, and mental anguish).

*Allstate Insurance Co. v. Troelstrup*, 789 P.2d 415 (Colo.1990), is not to the contrary. In *Troelstrup*, the question was whether the insured, who was convicted of sexual assault, was covered under his homeowner's policy when he was sued by the victim of the sexual assault. The poli-

cy defined bodily injury as "bodily injury, sickness, or disease, including resulting death, care and loss of service." The insurer in *Troelstrup* did not contest that the allegations of pain, shock, and mental suffering were sufficient to allege bodily injury when the injury claim was based on several sexual acts, including sexual assault on the victim who was a minor child. *Id.* at 417.

Here, Reutter did not allege any physical injury, physical contact, or pain and her claim is not within the bodily injury coverage provided by Hartford's general liability policy.

## IV

▮ Since Reutter's claims against the city were covered under Great Southwest's policy, we must determine whether National Casualty has a right to seek reimbursement from Great Southwest for its defense costs and the amount paid to effect settlement.[2] The court of appeals did not decide the issue because it held that neither Great Southwest's policy nor Hartford's policy covered Reutter's claim. The trial court determined that National Casualty lacked the right to seek reimbursement from Great Southwest because of a lack of contractual relations between the parties. We disagree.

This is another issue of first impression in Colorado. The trial court cited *Continental Casualty Co. v. Fireman's Fund Insurance Co.*, 403 F.2d 291 (10th Cir. 1968), and *Brayman v. Northwestern Mutual Insurance Co.*, 381 F.Supp. 362 (D.Colo.1974), to support its conclusion that National has no right of contribution from Great Southwest. We decline to follow these cases as a statement of Colorado law. In *Continental,* because the issue had not yet been addressed in Colorado, the Tenth Circuit Court of Appeals declined to make its own rule and adopted the trial court's conclusion that the insurer was not entitled to reimbursement of attorney fees. 403

F.2d at 336.[3] In *Brayman* the United States District Court for the District of Colorado held that an insurance carrier was not entitled to reimbursement of attorney fees, costs, and expenses from a carrier that refused to participate in the defense of the insured.

In contrast, the majority of courts that have decided the issue permit an insurer that voluntarily pays more than its share of a loss to demand contribution from a second insurer. *See, e.g., Forum Ins. Co. v. Ranger Ins. Co.,* 711 F.Supp. 909, 914 (N.D.Ill.1989) (insurer can recover share of defense costs and indemnity payment from co-insurer under either a contribution or a subrogation theory); *Vigilant Ins. Co. v. Employers Ins.,* 626 F.Supp. 262, 268–69 (S.D.N.Y.1986) (nonparticipating insurer must contribute to settlement and costs of defense); *Insurance Co. of North Am. v. Liberty Mut. Ins. Co.,* 128 Cal.App.3d 297, 180 Cal.Rptr. 244, 250–51 (1982) ("[W]hen a claim is made which arguably is within the scope of the policy, the insured has a right to expect a defense by his insurer and that the insurer will expend every effort in the insured's behalf in attempting to resolve the controversy."); *Sacharko v. Center Equities Ltd. Partnership,* 2 Conn.App. 439, 479 A.2d 1219, 1224 (1984) ("The general rule is that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense."); *Cordial Greens Country Club, Inc. v. Aetna Cas. & Sur. Co.,* 41 N.Y.2d 996, 395 N.Y.S.2d 443, 444, 363 N.E.2d 1178, 1179 (1977) (both insurers obligated to defend since allegations may fall within coverage of each policy); *see also St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.,* 25 Ariz.App. 309, 311–12, 543 P.2d 147, 149–50 (1975) (insurer, by properly engaging in settlement, "does not lose right to recover from other carriers who are obligated for the same loss").

---

2. We need not address this issue with regard to Hartford since we have held that the Hartford policy does not provide coverage.

3. In addition, the *Continental* court's conclusion that the insurer was entitled to reimbursement of settlement paid is consistent with our conclusion here. *See* 403 F.2d at 336–37.

The effect of the view taken by the federal courts in *Brayman* and *Continental* would be to reward an insurer for refusing to honor its contractual obligations by failing to defend a lawsuit brought against the insured that falls within the terms of the policy. *See* 8A Appleman, *Insurance Law and Practice* § 4921 at 538 (1981). Consequently, we will follow the majority rule, and conclude that National is entitled to pro rata contribution from Great Southwest of its defense costs and settlement payment.

National is also entitled to contribution under the "other insurance" clause in Great Southwest's Public Officials Liability Policy. The other insurance clause provides for contribution in the event that other valid and collectible insurance applies to the loss on the same basis.[4] In addition, having paid the settlement on behalf of the city, National is subrogated to the rights of the city under the subrogation clause in its Public Officials and Employees Legal Liability Policy.[5] Great Southwest admits in its answer brief that "in the event that the Court determines that Great Southwest has some obligation as to damages, Great Southwest could be forced under *Allstate* to pay a pro-rata share of those damages for which it had concurrent coverage with National Casualty." *See Allstate Ins. Co. v. Frank B. Hall & Co.*, 770 P.2d 1342 (Colo.App.1989).

### V

We reverse the court of appeals decision affirming summary judgment for Great Southwest on the ground that the claim was made outside the policy period. We return this case to the court of appeals with directions to return the case to the trial court for a determination of the amount of National's recovery for defense and settlement costs against Great Southwest. We affirm the court of appeals decision affirming summary judgment for Hartford based on the determination that emotional distress did not constitute bodily injury within the meaning of the policy.

---

4. Great Southwest's policy provides:

   Other Insurance

   The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. . . .

   When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable provision below:
   (a) Contribution by Equal Shares. . . .
   (b) Contribution by Limits. . . .

5. National's policy provides:

   **SUBROGATION CLAUSE.** In the event of any payment under this policy, the company shall be subrogated to the extent of such payment to all rights of recovery therefore. . . .