[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CHOICE OF LAW
This court has asked the parties in the above-captioned litigation to state their positions regarding the question of which state's law will be applied to issues other than the "notice issue."
 Procedural Background
On February 24, 1993, this court, Freed, J., ruled that New York law should apply to the issues of this case. Judge Freed concluded that this would be the result regardless of whether the court adhered to the traditional lex loci approach or theRestatement (Second) Conflicts ("Second Restatement") approach. He then concluded: "It is clear to this court that in evaluating the most significant contacts relative to the issue in this case, it is brought to the inevitable conclusion that New York is the only state which could fall under this category." Id. at 24-25.
The case then proceeded to trial, with the initial trial focusing only on Reichhold's Tacoma, Washington site. Judge Freed bifurcated the proceedings to allow trial of the notice issue first, in recognition of the fact that resolution of the notice issue in favor of the Defendants would obviate the need for further proceedings. In July of 1996, the jury returned a verdict in favor of virtually all of the Defendants, finding that Reichhold did not fulfill its contractual obligation to provide Defendants with timely written notice of an occurrence at the Tacoma site.
Reichhold appealed the jury's verdict. On December 23, 1997, the Connecticut Supreme Court reversed the trial court's application of New York law to the notice issue in this case and remanded for a new trial. See Reichhold Chemicals, Inc. v.Hartford Accident Indem. Co., 243 Conn. 401, 423, 703 A.2d 1132
(Dec. 23, 1997), reconsideration denied, No. SC 15698 (Feb. 18, 1998).
The Supreme Court ruled that the trial court should have CT Page 12750 applied § 193 of the Restatement (Second) Conflict of Laws, which presumes that the law of the state in which the insured risk is located should be applied to a given issue "unless another state has an overriding policy-based interest in the application of its law" as to that issue. 243 Conn. at 414.
In applying § 193 to the notice issue, the Court found that there was a conflict in the law of the "interested" states. The courts of New York hold that failure to comply with notice provisions in insurance policies results in forfeiture of coverage. The courts of Washington, on the other hand, afford protection from forfeiture by requiring the insurer to demonstrate that it was prejudiced before it can prevail on a late notice defense. The Supreme Court considered the policies underlying the notice law in each state and concluded that New York's interest in applying its own notice law was not sufficiently compelling to override application of Washington law. Connecticut, like Washington, does not allow late notice to result in automatic forfeiture of insurance, but instead requires the insured to prove that the insurer was not prejudiced by the late notice. The Court determined that Connecticut's policy with respect to late notice was more closely in accord with the policy of Washington than that of New York.
The parties have identified two additional issues on which the law of New York and Washington differ: 1) the interpretation of the pollution exclusion clause in the pertinent insurance policies; and 2) the "allocation" of damages, that is, how covered damages, if any, will be allocated (a) over the years in which the damage takes place and (b) between insurer and insured.
 Discussion of Law and Ruling
In Reichhold the Court adopted the special presumption of § 193 of the Restatement (Second)of Conflict of Laws, which pertains to liability insurance contracts and provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied. Section 193 states that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles CT Page 12751 stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."
In determining whether New York had a more significant relationship to the insurance contract with respect to the notice issue, the Court considered the factors of § 6(2) of the Restatement (Second):
 Section 6(2) of the Restatement (Second), which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the "most significant relationship": "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."
243 Conn. at 409.
This court does not agree with the plaintiff who has taken the position that the ruling of the Connecticut Supreme Court requires application of Washington law to all issues presented in the retrial relating to the Tacoma site. The Court in Reichhold
repeatedly analyzed the competing interests of New York and Washington in the application of their "notice law" and it reviewed the policies "that underlie each state's notice law." See 243 Conn. at 414-23. The scope of the Court's ultimate ruling is equally limited:
 We conclude that New York's "interest" in the application of New York notice law is not sufficiently compelling to overcome the § 193 presumption in favor of application of Washington law. Because Washington is the state with the "most significant relationship" to the notice issue, Washington notice law, rather than New York notice law, should have been applied.
243 Conn. at 423. (emphasis added).
The Court in Reichhold did not create the requirement of an issue-by-issue analysis. That requirement is found in the CT Page 12752 language of § 193 set forth above. The comments to § 193 incorporate by reference comments b-d to § 188. Id. § 193 cmt. c. The relevant comment — comment d (dealing with "The issue involved") — provides: "The courts have long recognized that they are not bound to decide all issues under the local law of a single state. . . Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially relevant states." Id. § 188, cmt. d.
Thus, an analysis of the § 6 factors is required with respect to each "particular issue" and, where those factors demonstrate that a state other than the location of the risk has "a more significant relationship . . . to the transaction and the parties" with respect to that issue, the law of that state will be applied to the issue in question.
Since the Supreme Court's ruling was limited to the notice issue, this court must undertake a separate choice-of-law analysis as to the pollution exclusion and allocation issues, the remaining issues on which the laws of Washington and New York are at odds. In making this analysis the court must apply the factors of § 6 of the Restatement to the foregoing issues as the Court in Reichhold applied them to the notice issue.
The first step in the analysis is to determine whether more than one state has an "interest" in the issue in question.243 Conn. at 414. Here, both New York and Washington have purported interests in the application of their laws. While the Supreme Court's analysis of this threshold issue included discussion of some factors that applied only with regard to the notice issue, it articulated the following "interests" that carry over to the remaining issues — New York's interest in limiting the availability of liability coverage to situations covered by the policy terms and Washington's interest in ensuring that hazardous waste sites within its borders are remediated.
The next step is to determine whether the laws of New York and Washington are in conflict with respect to the pollution exclusion and allocation issues. As more fully explained below, this court finds that there is a conflict in the laws of Washington and New York with respect to those two issues.
 Choice of Law as to the Pollution Exclusion Language in Policies Insurance CT Page 12753
Most of the policies at issue in this case (with the exception of the earlier policies) contain "pollution exclusions," which exclude any coverage for the discharge, dispersal, release or escape of pollutants or contaminants except in the limited circumstance where such pollution is attributable to a discharge of contaminants that is both "sudden and accidental" or "sudden, unintended and unexpected."
New York follows the majority rule, holding that the term "sudden," as used in the pollution exclusion, is unambiguous and as a matter of law must be construed to mean "abrupt." See, e.g.,Northville Indus. Corp. v. National Union Fire Ins. Co.,679 N.E.2d 1044, 1048 (N.Y. 1997) (rejecting the insured's argument that the term "sudden" was ambiguous and stating "[w]e cannot reasonably call `sudden' a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process"); County of Broome v. AetnaCas. Sur. Co., 54 N.Y.S.2d 620 (App.Div. 1989) (longstanding period of drainage and continuous discharges cannot be considered "sudden and accidental"), appeal denied, 547 N.Y.S.2d 848 (N Y 1989).
In so ruling, the courts of New York have adhered to the requirement that contracts be read as a whole and have refused to rewrite insurance policies to provide coverage beyond that which was intended. See, e.g., Northville Indus. Corp.,679 N.E.2d at 1047-48 ("Try as I will, I cannot wrench the words `sudden and accidental' to mean `gradual and accidental,' which must be done in order to provide coverage in this case.") (citations omitted).
The courts of Washington, on the other hand, have refused to give the term "sudden" its plain meaning, holding instead that, as used in the pollution exclusion, the term "sudden" has no temporal element and that it should be construed to mean "unexpected." See, e.g., Queen City Farms, Inc. v. Central Nat'lIns. Co., 882 P.2d 703, 725 (1994), dissenting op. amended,891 P.2d 718 (Wash. 1995); Key Tronic, Inc. v. Aetna (CIGNA) FireUnderwriters Ins. Co., 881 P.2d 201 (Wash. 1994). The courts of Washington thus engage in the very activity criticized by the courts of New York — the rewriting of the policies to extend coverage in areas beyond that contemplated by the policy terms.
One of the dissenting opinions in Queen City Farms stated CT Page 12754 that "whatever `sudden' means, it does not mean gradual. The ordinary person would never think that something which happened gradually also happened suddenly. The words are antonyms."882 P.2d at 743 (Madsen, J., dissenting)
While no Connecticut appellate court has construed the meaning of "sudden and accidental" in a pollution exclusion clause, several Connecticut Superior Courts have construed those words in a manner consistent with the New York construction. See, e.g., Linemaster Switch Corp. v. Aetna Life Casualty Corp., No. CV-91-0396432S 15 CONN. L. RPTR. 223, 1995 WL 462270, at *33 (Conn.Super.Ct. July 25, 1995) (Corradino, J.) ("I find as a matter of law that the word `sudden' in the pollution exclusion clause should be given a temporal significance."); Carrier Corp.v. The Home Ins. Co., No. CV-88-352383-S, 1994 WL 547736, at *1 (Conn.Super.Ct. Sept. 21, 1994) (O'Neill, J.) ("Sudden is basically a temporal concept. An event such as a boxer's punch is sudden but it is to be expected. . . It is the event — the occurrence — the accident which must be sudden. The damages may be gradual."). See also Stamford Wallpaper Co.,Inc. v. TIG Ins. Co., 138 F.3d 75 (2d Cir. 1998) (acknowledging that under Connecticut law, the term "sudden" has a temporal meaning); EDO Corp. v. Newark Ins. Co.,878 F. Sup. 366 (D. Conn. 1995) (concluding that there was no conflict between the law of New York and the law of Connecticut as to the meaning of the pollution exclusion and citing a New York case that made the same observation).
These courts, like the courts of New York, have refused to rewrite policies to extend coverage to situations outside the scope of coverage provided by the unambiguous language of the policy terms. See, e.g., Linemaster,15 CONN. L. RPTR. 223, 1995 WL 462270, at *29 (reviewing the fact that some courts outside of Connecticut had refused to give the term "sudden" its clear meaning and criticizing the "judicial rewriting of CGL insurance contracts depriving insurers of the protection they thought policy language gave them").
Based on the foregoing, the law of New York on the pollution exclusion clearly conflicts with the law of Washington. The law of Connecticut is in accord with the law of New York on this issue.
The next step in the choice-of-law analysis is to apply the factors set forth in § 6 to the "particular issue" in question and to determine which of the "interested states" has CT Page 12755 the more significant relationship to the transaction and the parties, with respect to that issue.
Section 6(2)(a) requires consideration of the "needs of interstate and international systems." The official comments to § 6 explain that the choice-of-law rules "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Second Restatement § 6 cmt. d.
The Supreme Court did not discuss this factor in its analysis of the notice issue. Therefore this court infers that the Court did not consider that the decision on the choice of law with respect to the notice issue would have any significant impact on relations or commerce between the states. The impact of the choice of law decision with respect to the pollution exclusion and the allocation issues is equally insignificant.
The Court in Reichhold devoted much of its analysis to subsection (b) — the relevant policies of the forum. Applying that factor to the notice issue, the Court determined that the law of Connecticut was more consistent with Washington law than New York law. Specifically, it noted that Connecticut law "splits the difference" between Washington notice law and New York notice law (since, like Washington, it required a showing of prejudice before it would allow an insurer to escape liability but, unlike Washington, it put the burden of proof on the insured). The Court then reviewed the policies underlying each state's notice law and concluded that the public policy consideration in both the notice laws of Connecticut and Washington was protection of the insured against possible unjust forfeiture:
 Although Connecticut law therefore provides policyholders with less protection than does Washington law, it does provide protection. Because New York law affords no protection from possible unjust forfeiture; see American Home Assurance Co. v. International Ins. Co., supra, 90 N.Y.2d 433; we conclude that Connecticut notice law is more consistent with Washington law than it is with New York law.
243 Conn. at 419.
Application of this very analysis with regard to the pollution exclusion reveals that the law of Connecticut on the CT Page 12756 pollution exclusion, as well as the policy underlying that law, is in accord with the law and policy of New York and is at odds with the law and policy of Washington, resulting in the conclusion that § 6(2)(b) clearly weighs in favor of application of New York law on the pollution exclusion issue.
The policies underlying the Connecticut courts' interpretation of the pollution exclusion fall into two categories: (1) basic rules of insurance contract construction and the Connecticut courts' desire to enforce insurance contracts as written; and (2) policies specifically tied to the pollution exclusion itself.
The Connecticut law on the construction of insurance contracts is clear. In Heyman Assocs. No. 1. v. Insurance Co ofPennsylvania, 231 Conn. 756, 653 A.2d 122 (1995), the plaintiff contended that an absolute pollution exclusion in its insurance policy which excluded coverage for "any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants" did not exclude its claim for costs incurred after the Coast Guard required it to remediate the damages caused when it dumped fuel oil into Stamford Harbor. Although the exclusion clause also specified that "pollutants" included "liquid contaminants," the plaintiff argued that the policy was ambiguous as to whether fuel oil was a "pollutant" thereunder.[1] The Supreme Court found no ambiguity and stated:
 Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. However, when the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." "[T]his rule of construction favorable to the insured extends to exclusion clauses."
 Our jurisprudence makes clear, however, that "[a]lthough ambiguities are to be construed against the insurer, when the CT Page 12757 language is plain, no such construction is to be applied." Indeed, "courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.
231 Conn. at 769-71 (citations omitted).
Thus, there is a policy in Connecticut to enforce insurance contracts as written, and to resist policyholders' requests to rewrite the policies to extend coverage in areas where coverage is excluded by clear and unambiguous policy terms. See, e.g.,Linemaster, 15 CONN. L. RPTR. 223, 1995 WL 462270, at *4 ("Where a judge finds ambiguity where none exists, he or she is in effect making the insurance contract instead of the parties. Such inappropriate judicial activity also occurs when a court, in order to give its own meaning to the policy, fails to construe the policy as a whole.").
Connecticut courts addressing the pollution exclusion issue have relied upon the above tenets of contract construction and have flatly rejected policyholders' arguments that the term "sudden" is ambiguous and should be construed to mean "unexpected or unintended." The Linemaster court, for example, considered the insured's argument that the pollution exclusion should be deemed ambiguous and given the construction most favorable to the insured, but ruled that such construction "would not pass muster with our court," under Heyman. Id. at *31. Moreover, as previously noted, the Linemaster court specifically criticized the courts that had deemed the term "sudden" to be ambiguous, saying that such "judicial rewriting of CGL insurance contracts depriv[es] insurers of the protection they thought policy language gave them." Id. at *30.
In ruling that the pollution exclusion is unambiguous and must be enforced as written, the courts of Connecticut have provided important insight on the policy considerations underlying the pollution exclusion and their reading of that exclusion. The Linemaster ruling is particularly instructive on this point.
As indicated above, the Linemaster case, like this one, involved questions as to the proper interpretation of various insurance policy terms, including the pollution exclusion. On the issue of whether the pollution exclusion barred coverage for the claims in question, Judge Corradino provided a well-reasoned CT Page 12758 analysis of the pollution exclusion, including discussion of the divergent case law, the reasons behind the introduction of the pollution exclusion in the 1970s, and the public policy reasons supporting the conclusion that "sudden" must be construed to have a temporal aspect.
Judge Corradino explained that "insurers designed the suddenness requirement [within the pollution exclusion] to avoid the `moral hazard' that inhered in insurance coverage for gradual losses." Id. at *28. He described the "moral hazard" issue as follows:
 A gradual loss, the insurers thought, could go undetected until it reached catastrophic proportions and, once manifested, often could not be traced to its source. By the time the loss was detected, the insured might long since have left the scene. Even if the insured planned on staying, he would be more likely to engage in activity that caused gradual losses if he thought he would never be caught. Thus, the insured would have a greater incentive to pollute if his policy covered gradual losses. The insurer wished to discourage the insured from acting on that temptation.
Id. (citations omitted). Thus, the "public policy" supporting the pollution exclusion was to give industry "the incentive to improve its manufacturing and disposal processes" and thereby "foster environmental protection." Id. at *29.
Another public policy identified by the Linemaster court was the "public policy goal" of avoiding shifting the "massive costs" of environmental cleanup onto the insurance industry "when it is obvious that the net effect will be to bankrupt some insurers, drive others out of supplying vital insurance coverage to whole classes of industry, or result in premium increases imposed on all businesses, some of whom have not contributed to pollution or may have taken steps to clean up pollution caused by others without government prompting." Id. at *12.
Connecticut policy thus favors enforcing contracts as written and fostering environmental protection by not allowing corporations to shift to their insurers the costs associated with the cleanup of pollution caused by the corporations' business operations and activities. These policy interests are served by applying New York law on the pollution exclusion, as it is in accord with Connecticut law. Application of Washington law, on CT Page 12759 the other hand, would be inconsistent with the policies of this forum.
Section 6(2)(c) requires consideration of "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue." InReichhold the Supreme Court reviewed the policy considerations behind the actual prejudice rule in Washington and concluded that Washington had an interest in preventing forfeiture of coverage in cases in which the insurer was not prejudiced by the late notice. Because Connecticut law and policy did not allow automatic forfeiture, this factor weighed in favor of the application of Washington law on the notice issue.
Application of this factor to the pollution exclusion issue demonstrates that New York policy is in accord with that of Connecticut. First, New York law is clearly in accord with Connecticut law in its adherence to the basic tenets of contract construction. In the context of a choice-of-law determination the federal district Court in EDO Corp. v. Newark Ins. Co.,878 F. Sup. 366 (D. Conn. 1995), agreed with the insurers' position that "New York and Connecticut law governing the interpretation of insurance contracts is identical." 878 F. Supp. at 370. The court then reviewed New York case law and concluded that the principles of construction relied upon by New York courts in interpreting the pollution exclusion were "entirely consistent with those set forth by the Heyman court." Id. at 371.
The Supreme Court specifically acknowledged New York's "interest in limiting coverage with respect to pollution exclusion clauses" (citing Technicon Elecs. Corp. v. AmericanHome Assurance Co., 533 N.Y.S.2d 91 (1988), aff'd, 544 N.Y.S.2d 531
(1989)). 243 Conn. at 414-15.
A review of New York law confirms the Supreme Court's conclusion. As stated by the court in Borg-Warner Corp. v.Insurance Co. of N. Am., 577 N.Y.S.2d 953, 958-59 (N.Y.App.Div. 1992),leave to appeal denied, 600 N.E.2d 632 (N.Y. 1992), New York has a "strong policy against allowing commercial or industrial enterprises to pollute the environment and escape the responsibility for the entire cost of cleanup by purchasing insurance." Similarly, the court in Technicon described "New York's strong policy of encouraging a clean environment by eliminating `subsidized pollution,'" and it stated that the rationale for the pollution exclusion was, in part, "to deter CT Page 12760 deliberate pollution by withholding the shelter of liability insurance for injuries resulting from such conduct."533 N.Y.S.2d at 103.
Based on the foregoing, New York has stated a clear and compelling interest in the application of its laws to the pollution exclusion. When this factor is applied to "the transaction and the parties," as required under § 193, New York's interest in this matter is heightened. All important actions relating to the insurance contracts at issue in this case took place in New York among parties headquartered in New York. A state has an interest in enforcing contracts entered into within its borders by state residents. General Ceramics, Inc. v.Fireman's Fund insurance Companies, 66 F.3d 647 (3rd Cir. 1995);Aetna Cas. Sur. Co. v. Dow Chemical Co., 883 F. Supp. at 1110.
In General Ceramics, supra, the Court considered the conflicting law of New Jersey and Pennsylvania. Pennsylvania had rejected the argument that the word "sudden" in the pollution exclusion clause was ambiguous. The Court observed:
 Pennsylvania's interpretation of the pollution-exclusion clause reflects its interest in giving effect to the literal meaning of unambiguous contract terms. That interest at heart reflects a view that contracting parties are in the best position to ascertain their own needs and wants and that Pennsylvania will encourage a secure commercial environment if it enforces commercial agreements entered into between private parties as written but stays neutral on the substance of those agreements.
66 F.3d at 657.
The Supreme Court, in addressing the notice issue in this case, acknowledged that New York has an interest in protecting the interests of the insurers who are based in New York. Specifically, the Court stated that "because three of the six defendants have their principal places of business in New York and because all six negotiated, executed and administered the policies through their New York offices, application of New York law would further the protective policy underlying New York's notice law." 243 Conn. at 415. Similarly, application of New York law would further the protective policy underlying the pollution exclusion. CT Page 12761
The policy underlying Washington law is at odds with the law of New York and Connecticut. First, the courts of Washington are not averse to rewriting policies to extend coverage in areas beyond the coverage provided by clear policy terms. On the specific issue of the pollution exclusion, they have refused to construe it in keeping with its clear terms. In so doing, they have allowed corporations to shift the costs associated with their polluting activities to their insurers. As noted by the dissenting opinion in Queen City Farms, supra, the rulings of the Washington Supreme Court on the pollution exclusion thus "reward the irresponsible polluter" by rewriting the pollution exclusion to cover gradual pollution despite the clear policy language to the contrary. 882 P.2d at 737 (Guy, J., dissenting). As previously discussed, this is contrary to the law and policy of both New York and Connecticut.
From the foregoing it is clear that the factors set forth in § 6(2)(c), the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, weighs in favor of the application of New York law.
Section 6(2)(d), the protection of justified expectations, is to be given special significance or weight in assessing a choice-of-law issue arising in the area of contract law. SecondRestatement § 188 cmt. b.
In applying this factor to the notice issue, the Supreme Court concluded that while the insurer would be justified in expecting there to be no coverage in cases where it was prejudiced by the insured's delay in providing notice, "such expectation of protection from liability in cases in which the lack of notice has not prejudiced the insurer is not justified."243 Conn. at 421. The Court thus concluded that "[r]equiring a showing of prejudice protects the justified expectations of the parties and at the same time prevents one party from reaping an unjust windfall." Id.
Application of the Supreme Court's analysis to the pollution exclusion issue leads to the conclusion that protection of the parties' justified expectations regarding the pollution exclusion requires application of New York law, as opposed to Washington law.
When the effect of late notice was at issue, the Court CT Page 12762 indicated a desire to prevent the insurers from reaping the windfall that would occur when late notice forfeited the insured's policy rights. By the same token, when considering the interpretation of the pollution exclusion clause, this court must avoid a choice-of-law decision which would result in a windfall to the insured. Such a windfall would result under Washington's interpretation of "sudden and accidental" as meaning "gradual and unintended."
The court in Linemaster noted the harm in "giving insureds a windfall for coverage they never paid for" by shifting cleanup costs to insurers, Linemaster, 15 CONN. L. RPTR. 223,1995 WL 462270, at *22, and recognized that in order to effectuate the parties' reasonable expectations, insurance policies should be enforced as written, in keeping with the basic tenets of contract law.
New York law confirms that the "reasonable expectations" factor weighs in favor of New York law on the pollution exclusion. As acknowledged by the Court of Appeals of New York inNorthville Industries, "[a]pplying the temporal element of sudden — as an abrupt happenstance — in the pollution exclusion clause exception also conforms to the common sense meaning of the term and the reasonable expectations of a business person." NorthvilleIndustries Corp., 679 N.E.2d at 1048. (emphasis in original).
As noted above, New York has the dominant interest in enforcing the reasonable expectations of the parties, in light of the strong connections between New York and the contracts and parties at issue in this case. Therefore, § 6(2)(d) weighs in favor of the application of New York law on the pollution exclusion, as application of that state's law will promote the reasonable expectations of the parties.
Section 6(2)(e) calls for consideration of "the basic policies underlying the particular field of law." The Supreme Court linked discussion of this factor with the factor set forth in § 6(2)(d), by characterizing the protection of justified expectations as "a basic principle underlying the field of contracts." 243 Conn. at 421. For the reasons discussed above. therefore, this factor would weigh in favor of New York law, as application of New York law will further the justified expectations of the parties.
Section 6(2)(f) requires consideration of "certainty, predictability and uniformity of results." The official comments CT Page 12763 explain that application of this factor calls for the court to "give consideration not only to its own relevant policies . . . but also to the relevant policies of all other interested states." Second Restatement § 6 cmt. f. Accordingly, "[t]he forum should seek to reach a result that will achieve the best possible accommodation of these policies." Id. The comments further provide: "In general, it is fitting that the state whose interests are most deeply affected should have its local law applied. Which is the state of dominant interest may depend upon the issue involved." Id.
The Supreme Court stated that certainty, predictability and uniformity of results within our jurisdiction under § 6(2) (f) of the Restatement would be advanced by the application of Washington notice law and impeded by the application of New York notice law. 243 Conn. at 419. However, the Court's analysis must be viewed in the context of the notice issue. The Court observed that, "[l]ike Washington, Connecticut has a significant public policy interest in ensuring that funds are available for the cleanup of hazardous waste sites." 243 Conn. at 420. It further stated:
 There currently are fourteen Connecticut sites on the EPA Superfund National Priority List and eleven Connecticut sites on the state Superfund Priority List. Those sites represent a significant threat to the environment, to the health and safety of Connecticut citizens and to our state's financial resources. Accordingly, Connecticut has a compelling interest in not applying New York notice law in environmental liability coverage cases involving Connecticut sites.
243 Conn. at 420.
The plaintiffs have argued, in essence, that Connecticut's interest in ensuring that funds are available for cleanup of hazardous waste sites should be paramount to all other interests and policies. However, it is clear that Connecticut does not allow such interest to override its law as to the, meaning of unambiguous insurance contract terms. See Heyman Assocs. No. 1.v. Insurance Co of Pennsylvania, supra. As discussed in the prior sections, both Connecticut and New York have strong policies in favor of enforcing insurance contracts as written and refusing to rewrite them to extend coverage to areas not addressed by the clear contract terms. Such policy fosters environmental protection by not allowing corporate entities to shift to their CT Page 12764 insurers the costs associated with environmental cleanup. Therefore, when the interpretation of the pollution exclusion clause is at issue, the § 6(f) principles of certainty, predictability and uniformity of results within our jurisdiction are clearly served by application of New York law to the pollution exclusion issue.
Section 6(2)(g) deals with "ease in the determination and application of the law to be applied." The official comments to the Second Restatement state that "[t]his policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." SecondRestatement § 6 cmt. j.
As the plaintiff has argued, this factor would be best served by having only one state's law apply. However, both § 193 of the Restatement and the Reichhold decision require an issue-by-issue choice of law analysis. Such analysis is inherently antithetical to the goal of ease in application of the law, and would be completely unnecessary if ease of application were the primary goal of a choice of law decision.
Based on the foregoing, when the § 6 factors are applied to the pollution exclusion in the same manner employed by the Supreme Court in addressing the notice issue, it is clear that New York has a more significant relationship to this issue. Therefore, under § 193, the law of New York, rather than the law of Washington, should be applied in interpreting the pollution exclusion.
 Choice of Law as to the Allocation of Damages
In order for Reichhold to recover from Defendants, a determination must be made regarding allocation of any covered damages. This raises two distinct issues: (1) how much of the covered damages will be allocated to which years, and (2) will any damages be allocated to the insured for, years when the insured contributed to the pollution damage but the terms of the insurance then in effect precluded coverage (e.g., those years in which the pollution exclusion bars coverage).
New York and Washington law materially differ with respect to both these issues. Defendants' insurance policies expressly limit the insurers' liability to property damage "which occurs during the policy period," and not for property damage before or after CT Page 12765 that. Courts applying New York law have repeatedly rejected the proposition that an insurer is "jointly and severally" liable for the entire amount of pollution damage, regardless of how much damage takes place during the insurer's policy period. New York law requires an insurer to pay only for that portion of the covered property damage that takes place during the policy period and that, in the absence of evidence warranting a different allocation, covered damages will be allocated pro rata based on the time the insurer was on the risk. See Stonewall Ins. Co. v.Asbestos Claims Management Corp., 73 F.2d 1178, 1203 (1995) (rejecting joint and several liability), reh'g denied, 85 F.3d 49
(2d Cir. 1996); Uniroyal, Inc. v. Home Ins. Co., 707 F. Sup. 1368
(E.D.N.Y. 1988) (allocating defense and indemnity costs for Agent Orange bodily injury claims on a proportional basis based on volume of Agent Orange delivered in each policy period);Continental Casualty Co. v. Rapid-American Corp., 80 N.Y.2d 640,655, 593 N.Y.S.2d 966, 974, 609 N.E.2d 506, 514 (1993) (indicating, in a case involving asbestos claims, that "[w]hen more than one policy is triggered by a claim, pro rata sharing of defense costs may be ordered"); Diamond Shamrock Chemical Co. v.Aetna Cas. Sur. Co., 258 N.J. Super. 167, 609 A.2d 440, 466-67
(N.J. App. Div. 1992), cert. denied, 134 N.J. 481, 634 A.2d 528
(1993) (construing New York law as rejecting joint and several liability and explaining that allocation based on time on the risk should be used only when a proper allocation based upon the relative liabilities of the insurers cannot be approximated);American Home Prods. Corp. v. Liberty Mut. Ins. Co., 565 F. Sup. 1485
(S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984).
Under New York law, the insured must also bear a portion of the costs of the pollution damage that is allocable to the years in which the insured had insurance policies in effect but the terms of those policies barred coverage. See Stonewall, supra;Olin Corp. v. Insurance Company of North America, 986 F. Sup. 841
(S.D.N.Y. 1997) (allocating cleanup costs to periods when insured did not have insurance coverage). This is based not only on the policy language but on fundamental fairness — the insured should not reap a windfall at the insurer's expense.
The parties all contend that Washington law on the allocation issue is found in the case of, American Nat'l Fire Ins. Co. v.BL Trucking Constr. Co., 134 Wash.2d 413, 951 P.2d 250 (Wash. 1998). However, the parties have very different views of the correct reading of Washington law. Reichhold has asserted that CT Page 12766 under BL Trucking it is entitled to "pick and choose" among its insurers and recover any insurer's full policy limits, so long as any portion of the injury in question took place during that insurer's policy period. Essentially, Reichhold argues that each of the policies allegedly implicated by Reichhold's Tacoma claim can be called upon to pay 100% of Reichhold's liability for that claim (up to the policy limits). For example, if Reichhold's dumping of one bucketful of waste at Tacoma caused pollution damage in Policy Year 1 and Reichhold's disposal of 100 tons of waste annually in Policy Years 2 through 20 caused vast amounts of additional pollution damage, Reichhold asserts that it can nonetheless recover 100% of its cleanup costs from all insurers that provided coverage in Policy Year 1 (up to their policy limits). Because only excess insurers remain as defendants in this case, Reichhold's "pick and choose" theory allows it to stack all the damages in the covered year and avoid having to exhaust all of its primary (or first-dollar) coverage for all years. Reichhold's view on allocation reads out of the policy the requirement that damage take place during the policy period — a construction that is contrary to New York's and Connecticut's rules of contract interpretation.
Defendants contend that the BL Trucking decision is limited to situations in which the continuing presence of contaminants deposited in one year causes ongoing damage in later years.
In BL Trucking, the insureds, a trucking company and its owner, Fjetland, owned a landfill in which they dumped slag waste from an ASARCO smelter. The landfill closed at the end of 1980. Northern Assurance, the appellant, issued a primary policy which was in effect from August 1980 to August 1983. Prior to trial, the court determined that the allocation period would be the seven years between January 1981 and April 1987. At trial, the jury found that Fjetland had expected damage as of June 1982. The insurance policy provided for coverage only if the pollution was "unexpected." The trial court found that Northern was liable for two-sevenths of the remediation costs. The Court of Appeals reversed, holding that there would be no allocation to the insured because the "all sums" language of the Northern Policy was ambiguous. The Washington Supreme Court affirmed. The Court rejected the insurer's argument that, absent allocation, the insured would, in effect, be provided with more insurance than it had originally purchased.
Although the parties have differing views on the extent to CT Page 12767 which the law of New York and that of Washington differ, it is clear that there is a material conflict between the law of those two states on the allocation issue.
The allocation issue, like the pollution exclusion issue, involves questions of policy interpretation. Accordingly, many of the considerations discussed above (in connection with applying § 6 factors to the pollution exclusion) apply with equal force with respect to the allocation issue. The factor addressed in § 6(2)(a) of the Restatement (the needs of the interstate and international system) has no greater application to the allocation issue than to the pollution exclusion issue. It does not weigh in favor of any of the interested states.
Section 6(2)(b), the relevant policies of the forum, weighs in favor of New York law. Although there are no Connecticut cases directly on point, at least-one Connecticut court has indicated that it will look to New York contract rules for guidance and implicitly rejected a "pick and choose" theory. In Sacharko v.Center Equities Ltd. Partnership, 2 Conn. App. 439, 479 A.2d 1219
(1984), the court was called upon to decide whether and how to apportion between two insurers the costs of defending and indemnifying an insured in a slip-and-fall case. Citing New York cases among others, the court stated:
 The general rule is that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense. . . Where two policies contemplate the risk equally, liability will be prorated based on the total policy limits.
2 Conn. App. at 447, 479 A.2d at 1224 (emphasis added). Like New York cases, Sacharko declined to adopt a "joint and several"/"pick and choose" approach.
Also the courts of Connecticut, in addressing this issue, would be bound by the general tenets of contract construction (previously discussed). Under those principles, the insureds' argument to read the phrase "during the policy period" out of the policies must be rejected and the policy terms must be enforced as written.
Moreover, the Connecticut principle in favor of preventing corporations from shifting cleanup costs to their insurers will CT Page 12768 be directly served by application of New York law on allocation, as New York law holds the insured responsible for its share of damages, including amounts relating to periods in which it was uninsured or underinsured. Thus, application of the pro rata approach espoused by the Stonewall and Olin courts would further Connecticut policy, while application of Washington law would have the opposite effect.
Recently the Supreme Court has reaffirmed the public policy of this state against joint and several liability in favor of apportionment of damages:
 [P]recluding the defendant from allocating fault is inconsist with the principle of comparative negligence that a defendant should be liable only for that proportion of the damages for which he or she was responsible. Donner v. Kearse, supra, 234 Conn. 668-69; Baxter v. Cardiology Associates of New Haven, P.C., 46 Conn. App. 377, 381, 699 A.2d 271, cert. Denied, 243 Conn. 933, 702 A.2d 640 (1997) ("a primary purpose of enacting [§ 52-572h] was to change the common law of joint and several liability such that a defendant would be liable only for that proportion of the damages for which he was responsible").
Bhinder v. Sun Co., 246 Conn. 223, 238, (1998).
The public policy in favor of apportionment of damages should apply with greater force to parties whose liability is already limited by contract, such as the defendant insurers, than to parties whose liability arises from the common law of torts, as in Bhinder. The law of Washington which, essentially, makes all insurers jointly and severally liable for all damages, including those arising during periods for which the insurers provided no insurance coverage, is completely antithetical to Connecticut's public policy in favor of apportionment of damages.
Section 6(2)(c) deals with the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. As discussed in connection with the pollution exclusion issue, New York (like Connecticut) has expressed strong policy-based interests in enforcing contracts as written, which entails interpreting contracts as a whole, giving meaning to all policy terms and not rewriting policies to extend coverage beyond that which is provided by the clear policy terms. In Stonewall Ins. Co. v.
CT Page 12769National Gypsum Co., No. 86 Civ. 9671, 1992 WL 163180 at *1-2 (S.D.N.Y. June 24, 1992) (attached as Exhibit D), aff'd sub nom.Stonewall Ins. Co. v. Asbestos Claims Mgt. Co., 73 F.3d 1178 (2d Cir. 1995), the court ruled that imposing joint and several liability "would render superfluous the [policy] language that coverage is provided for resulting injury `during the policy'. . . The insurance policy by definition excludes from coverage liability for injury which occurs outside the policy period." Id. at *2.
Both New York and Connecticut have expressed a clear interest in promoting environmental responsibility by holding corporate entities directly responsible for the cleanup of pollution caused by them as part of their ordinary business operations and in preventing them from shifting the costs relating thereto to their insurers. Permitting an insured to be reimbursed for pollution damage taking place in periods during which the insured had no insurance coverage would provide the insured with a windfall at the insurer's expense. Such a windfall to the insured would be as unfair to the insurer as the windfall to the insurer which the Court eschewed in Reichhold. See 243 Conn. at 421 (Court stated that showing of prejudice required under Connecticut's notice law prevented the insurer "from reaping an unjust windfall.")
In addition, based on the numerous contacts between New York and the policies at issue with respect to both transactions and parties, New York has a strong interest in having its law applied to the contracts at issue in this case.
Washington, on the other hand, cannot claim the same interest, as it has no connection to the policies themselves. As previously discussed, the fact that the site at issue is in Washington has no bearing on policy interpretation issues. Because the § 6 factors must be applied as to "the transaction and the parties" and because the location of the waste site has no relevance to questions of policy interpretation, Washington has no substantial interest in applying its laws to this matter.
The "protection of justified expectations" also weighs in favor of New York law. The parties would be justified in expecting the policies to be enforced as written, with the insurers being held liable only for damage "during the policy period" of their policies. This expectation would be protected by application of New York law and thwarted by application of CT Page 12770 Washington law. Reichhold's position that it is entitled to "pick and choose" any policy(ies) and hold that insurer liable for all costs incurred by Reichhold, regardless of the year in which the damage took place, is simply not reasonable.
As with the pollution exclusion, the basic policies underlying the particular field of law will be served by application of New York law, for the reasons discussed above, including the fact that application of New York law will help protect the justified expectations of the parties while comporting with Connecticut's policy in favor of apportionment of damages.
The discussions relating to § 6(2)(f), certainty, predictability and uniformity of result, and § 6(2)(f), ease in the determination and application of the law to be applied as to the pollution exclusion apply with equal force to the allocation issue.
Based on the foregoing, this court finds that New York has an overriding interest in having its laws applied to the issues of the pollution exclusion and allocation of damages. Accordingly, the law of New York will be applied to those issues in the trial concerning the Tacoma site.
By the court,
Aurigemma, J.